The bill also recognizes the enactment of the Computer Security Act in 1987, establishing that OMB require Federal agencies to identify the sensitivity of their information and to afford appropriate security protections for it. Not only must systems be secured to maintain confidentiality of sensitive data, but procedures must ensure that integrity of information and availability of systems and data are not compromised. A crucial component of establishing sound computer security management involves agency-wide training and awareness. If systems and information are to be safeguarded, training at all levels must be implemented. Again, as computer systems increasingly are linked to national and international networks, effective implementation of computer security is essential.

*Information technology*

One of the purposes of the Paperwork Reduction Act when it was originally enacted was: "to ensure that automatic data processing and telecommunications technologies are acquired and used by the Federal Government in a manner which improves service delivery and program management, increases productivity, reduces waste and fraud, and, wherever practicable and appropriate, reduces the information processing burden for the Federal Government and for persons who provide information to the Federal Government" (P.L. 96-511, sec. 2(a) (44 U.S.C. 3501(5)).

As such, information technology has been recognized from the beginning as instrumental in improving Government operations and fulfilling agency missions, including reducing the burdens imposed on persons who provide information to the Government.

Yet, the management and application of information technology to support Government operations has been a historical problem. The Comptroller General described in July 1991 that the management of automatic data processing equipment was characterized by:

(1) Overly complex and costly software that too often fails to meet user needs, is inefficient, or simply does not work; and

(2) A costly, prolonged, and ineffective acquisition process which too often emphasizes hardware characteristics over sound financial investment.

Noting that the functions assigned OMB, GSA, and the Department of Commerce under the Brooks Act were not changed by the Paperwork Reduction Act, the Comptroller General stated that, by reemphasizing the Brooks Act, the 1980 legislation attempted to strengthen the leadership and central direction provided by these agencies. Further, responsibilities for the information management functions covered by the bill should enhance the capability for applying advanced information technology to the problems of controlling paperwork burdens and improving the quality of data for program management and evaluation.

To support this 1980 message, the Comptroller General listed 70 GAO reports describing deficiencies in agency information management activities, with 31 dealing specifically with information technology problems.

Agencies have continued to spend more on information technology—now in the range of $25 billion a year, and totaling about

a quarter of a trillion dollars in the 14 years since the passage of the Act. GAO, too, has continued to report on deficiencies related to agency information technology activities and systems development efforts. In a February 1992 report summarizing 132 reports it issued between October 1988 and May 1991, GAO described ten categories of problems:

Inadequate management of information systems development life cycle;
Ineffective oversight and control of IRM;
Cost overruns in information systems development efforts;
Schedule delays in information systems development efforts;
Inaccurate, unreliable, or incomplete data;
Inability to ensure the security, integrity, or reliability of information systems;
Inability of systems to work together;
Inadequate resources to accomplish IRM goals;
Systems that make access to data time-consuming or cumbersome; and
Systems that were not performing as intended.

(See "Information Resources: Summary of Federal Agencies' Information Resources Management Problems." GAO/IMTEC-92-13FS, February 13, 1992.)

Described previously in the Information Resources Management section of this report (and summarized in the appendix) is a report by GAO describing ways that agencies can employ practices used by leading organizations in the private and public sectors to manage their information technology. This report, "Executive Guide: Improving Mission Performance Through Strategic Information Management and Technology." (GAO/AIMD-94-115, May 1994), describes 11 practices and related attributes and suggestions to agencies on how to get started in implementing the specific practice for better managing information and information technology.

Gene Dodaro, Assistant Comptroller General for Accounting and Information Management, GAO, testified before the Subcommittee on National Economic Growth, Natural Resources, and Regulatory Affairs, that GAO finds huge, complex information system modernizations at great risk from two basic management problems: (1) the failure to adequately select, plan, prioritize, and control system and software projects and (2) the failure to use technology to simplify, direct, and reengineer functional processes in ways that reduce costs, increase productivity, and improve service. These problems permeate critical Government operations in key agencies, such as the Federal Aviation Administration, Internal Revenue Service, Social Security Administration, and the Departments of Defense, Agriculture, and Veterans Affairs.

Mr. Dodaro singled out the following changes included in H.R. 830 that are patterned after GAO's "best practices" and will help deal with these problems:

Current provisions in the Act place the responsibility for effective information management and technology on the designated IRM senior officials and their respective organizational units. Section 3506 of the bill modifies this by strengthening the accountability of the agency head and of program managers for information resources supporting their programs.

PAPERWORK REDUCTION ACT
P.L. 104-13

[page 34]

Working with the designated senior IRM official and the Chief Financial Officer, these managers are to define program information needs and develop strategies, systems, and capabilities to meet those needs. Increasing program managers' accountability and involvement focuses information management decision-making and systems development activities on measurable mission outcomes of strategic importance to the agency.

The current law does not emphasize in ways that maximize the value of the investment or effectively identify and manage risks. Provisions in H.R. 830 call for strengthening processes that agencies use to decide their information technology expenditures and to set goals for measuring progress in using information technology to increase productivity and accomplish outcome-oriented results. Most importantly, Section 3506 requires agencies to assess and manage their information technology initiatives with defined processes for selecting, controlling, and evaluating the initiatives based on comparing anticipated benefits to actual results. Additionally, Sections 3.51 and 3505 help better manage risks by requiring the OMB Director to take steps to institute more discipline and accountability into the Government's technology expenditures.

The current law does not emphasize the necessary technical skills or the clear delineation of management roles and responsibilities, both of which are needed to manage information technology as part of an overall business strategy. Sections 3504 and 3506 of H.R. 830 require that training be developed to educate program officials and other agency managers about information technology. Section 3506 also defines the roles and relationships between program and IRM officials in the development of information systems and capabilities to meet program needs.

## G. CONCLUSION

Based on the record compiled by the Committee, during both this Congress and preceding attempts to reauthorize appropriations for the Paperwork Reduction Act since 1989 when the current authorization expired, there is ample evidence of the need to reauthorize appropriations and strengthen the Act. Improvements are needed to clarify OMB and agency responsibilities for all functional areas covered by the Act. Improvements are also needed in efforts to reduce the burden of meeting the Federal Government's information needs, increase the efficiency and effectiveness of Federal information resources management, and strengthen public participation in paperwork reduction and other IRM decisions. H.R. 830, as amended, accomplishes these purposes and the Committee strongly endorses its enactment.

## SECTION-BY-SECTION ANALYSIS

### SECTION 5001. SHORT TITLE

This legislation is entitled the "Paperwork Reduction Act of 1995."

197

LEGISLATIVE HISTORY
HOUSE REPORT NO. 104-37

[page 35]

### SECTION 5002. COORDINATION OF FEDERAL INFORMATION POLICY

This legislation recodifies chapter 35, title 44, of the United States Code. The bill is drafted as a revision of the chapter due to the number of proposed changes to current law. These changes range from substance to style. They include the deletion of obsolete terms and provisions, the reorganization of sections for purposes of clarity and consistency, the consolidation and refinement of definitions and common terms, and the addition of new requirements to update and strengthen the original purposes of the Act. To the extent of 1980, as amended in 1986, the legislation is a reaffirmation of the law's scope, underlying purposes, requirements, and legislative history, which remains an important explanation of the congressional intent underpinning the Act's provisions. To the extent the revision modifies provisions in current law, it is done for the purposes described below, and again, in order to further the purposes of the original law.

### SEC. 3501. PURPOSES

Section 3501 maintains the Act's primary focus on minimizing paperwork burdens on the public. The bill adds several additional purposes and revises and realigns other paperwork purposes to emphasize the need to improve information resources management (IRM) as a means to minimize paperwork and improve government programs, including the reduction of paperwork burdens and improved service delivery to the public. It promotes the theme of improving the quality and use of information to strengthen agency decisionmaking and accountability and to maximize the benefit and utility of information created, collected, maintained, used, shared, disseminated, and retained by or for the Federal Government. It emphasizes that information technology should be employed by Federal agencies to improve mission performance and reduce paperwork burdens, and that the Federal Government and State, local, and tribal governments should increase their common effort to improve the utility and decrease the burdens of collection of information activities.

### SEC. 3502. DEFINITIONS

1. The term "agency" is unchanged from current law.
2. The term "burden" is expanded with a more detailed list of descriptive examples of actions that constitute burden imposed by collections of information (e.g., reviewing instructions for using automated devices; acquiring, installing, and utilizing technology to gather, obtain, compile, or report information; adjusting the existing ways to comply with any previously applicable instructions and requirements; searching data sources; completing and reviewing the collection of information; and transmitting the information to the requesting agency or otherwise disclosing the information as instructed by an example). No substantive limitation is intended by the use of these examples. The Committee wants to cover all burdens associated with information collection.

The phrase "or for" an agency is added, as it is elsewhere in the legislation, to clarify that the burdens associated with providing,

198

## PAPERWORK REDUCTION ACT
### P.L. 104-13
### [page 36]

maintaining, or disclosing information to or for a Federal agency, or to a third party or the public on the instruction or behalf of a Federal agency, are all equally included in the meaning of the term "burden."

3. The term "collection of information" is amended to accomplish several purposes.

First, several phrases are added (i.e., "causing to be obtained," "requiring the disclosure to third parties or the public," and "or for an agency") to clarify that all Federally sponsored collections of information, not just those directly provided to a Federal agency, are contemplated within the meaning of the term. Information maintained, or information provided by persons to third parties, for example, is therefore covered by the Act, most particularly, the paperwork clearance requirements of sections 3506 and 3507, and the public protection provided by section 3512.

Whether a "collection of information" is conducted for or sponsored by the Federal government, rather than whether the government is the primary or immediate user of the information collected by a respondent, is the primary factor which determines whether a collection of information is covered by the provisions of the term. This clarification is intended to overturn the Supreme Court's interpretation of this term in *Dole v. United Steelworkers of America*, 494 U.S. 26 (1990) regarding third-party disclosure requirements within the scope of the Act.

Second, the phrase "regardless of form or format" replaces the phrase "through the use of written report forms, application forms, schedules, questionnaires, reporting or recordkeeping requirements, and other similar methods" contained in current law. This clarifies that regardless of the instrument, media, or method of agency action, a collection of information is any agency action that calls for facts or opinions resulting from answers to identical questions, identical reporting or recordkeeping requirements, or third party information disclosure requirements. This includes any collection of information, whether the agency action is described as an information request, collection of information requirement, or other term. It also includes information collection methods that are specifically listed in current law. It also includes information collection activities regardless of whether the collection is formulated or communicated in written, oral, electronic or other form, and regardless of whether the compliance is mandatory, voluntary, or needed to obtain a benefit or contract with the Federal government.

Third, the term "collection of information" replaces the terms "information collection request" and "collection of information requirement" in current law. The present definition of "information collection request" in section 3502(11), and all its uses in current law are deleted. The use of the term "collection of information requirement" in the current law's section 3504(h) is also deleted.

The use of the phrase, "collection of information," is made only for purposes of clarity and consistency. In the past, the use of separate terms created confusion about possible differences among the terms. The most significant instance involved the distinction between "information collection request" and "collection of information requirement," which was added to the Act by a floor amend-

199

## LEGISLATIVE HISTORY
### HOUSE REPORT NO. 104-37
### [page 37]

ment to the original 1980 legislation. In 1986, Congress amended the Act to include "collection of information requirement" in the definition of "information collection request." This action, however, left references to the two terms in the text of the Act. The current legislation conclusively ends any possible misunderstanding by creating a comprehensive definition for "collection of information" as the single term used in the Act.

4. The term "Director" is unchanged from current law.

5. The term "independent regulatory agency" is unchanged from current law.

6. A new definition is created for "information resources," which means information and related resources, such as personnel, equipment, funds, and information technology. The new definition is intended to complement the revised definition of "information resources management." Both the new definition and the amended definition serve to clarify and improve the existing law's definition of "information resources management." They make it clear that the resources to be managed are more than just information or information technology. They are those associated programmatic and managerial resources needed to perform information functions.

7. The term "information resources management" (IRM) is redefined to mean "the process of managing information resources to accomplish agency missions and to improve agency performance, including the reduction of information collection burdens on the public." This new definition is meant to further the original Act's intent to have Federal agencies better coordinate the management of information activities and associated resources. The legislation strengthens this mandate by focusing IRM on the basic reason for the Act's objective of reducing public information collection burdens.

8. The definition of "information system," is updated to mean an organized and distinct or discrete set of information resources and processes, automated or manual, for any elements of the collection, processing, maintenance, use, sharing, dissemination, and disposition of information. By revising the definition, the use of the term is clarified. Throughout the Act, as well as supporting agency program operations. The previous definition of "information system" appeared to make the phrase synonymous with a "management information system." Information systems are now understood to serve a much broader range of purposes than just providing management information.

9. The term "information technology" replaces the current term "automatic data processing equipment" (ADPE) but does not change the underlying definition from the "Brooks Act" (40 U.S.C. 759). The reason for this change is that the term "information technology" has replaced "ADPE" in common usage and management practice. Moreover, as broadly defined by the Brooks Act, the term covers computer and telecommunications equipment and services. Throughout the Act, therefore, the legislation substitutes "information technology" for various references to "automatic data processing," "automatic data processing equipment," and "telecommunications."

10. The term "person" is unchanged from current law.

200

11. The term "practical utility" is broadened and clarified by dropping the phrase "it collects" from current law. This change clarifies that federally conducted or sponsored collections of information which mandate that persons provide or maintain information to or for third parties may have practical utility if the actual use of or for the information is necessary for the proper performance of the functions of the agency. This change is part of the Committee's intent to clarify the term in light of overturning the interpretation of "collection" by the Supreme Court in Dole v. United Steelworkers of America.

12. The term "public information" is added. It means any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public. Its application in the Act, as amended by this legislation, is primarily in the context of "dissemination" of information by an agency.

13. The term "recordkeeping requirement" is clarified by the addition of the phrase "or for" an agency. As with the definition of "burden" and "collection of information," this amendment is meant to cover instances in which information is provided, maintained, or disclosed to or for an agency. To overturn the interpretation of "recordkeeping requirement" in Dole v. United Steelworkers of America, the definition is clarified by adding at the end, the specific inclusion of "retention, reporting, notifying, or disclosure to third parties" in the definition.

In addition to the treatment of these definitions, the legislation eliminates the following definitions as unnecessary:

"automatic data processing,"—this term is replaced by the term "information technology," as described above;

"data element," "data element dictionary," "data profile," "directory of information resources," and "information referral service"—these terms are unnecessary given the legislation's revision of section 3511, regarding the Government Information Locator Service; and

"information collection request"—this term is subsumed within the definition of "collection of information," as described above.

SEC. 3503. OFFICE OF INFORMATION AND REGULATORY AFFAIRS

Section 3503, which establishes OMB's Office of Information and Regulatory Affairs (OIRA), is amended to conform with the 1990 Chief Financial Officers Act's creation of a position of OMB Deputy Director for Management (DDM). While the position of the OIRA Administrator is and should continue to "serve as principal adviser to the Director on Federal information resources management policy," the Committee recognizes the status of the DDM as the OMB official designated by statute to coordinate and supervise the general management functions of OMB.

SEC. 3504. AUTHORITY AND FUNCTIONS OF DIRECTOR

Section 3504 sets out OMB's IRM authority and functions under the Act. The legislation's amendments to the section do not change the structure of OMB's functional responsibilities, but rather revise and refine the specific details under each function, and, for the first time, delineate specific "dissemination" responsibilities.

As revised, the section eliminates references to OMB as the implementing agency. This reflects the recognition and practice that OIRA cannot and should not attempt to take over operational responsibilities for agency IRM functions. For this reason, the legislation also describes detailed agency responsibilities in section 3506 to mirror the OMB functions spelled out in section 3504. This reflects a major purpose of the legislation, that is, to improve implementation of the Act by more clearly delineating agency responsibilities.

The bill also streamlines language and makes more consistent use of terms such as collection of information (e.g., instead of "information collection request" or "collection of information requirement"), information resources management, and information technology. Along these same lines of clarifying terms, section 3504(h) in current law (dealing with OMB review and approval of collections of information contained in proposed rules—an element of the so-called Kennedy Amendment to the original 1980 legislation) is moved, but without substantive change, to section 3507(d), which is the primary location of OMB paperwork review and approval provisions.

Subsec. (a)

As with the definition of IRM, this subsection identifies the Director's functional IRM responsibilities and focuses them on: (1) developing and coordinating governmentwide policies and guidelines, and (2) providing direction and overseeing the review and approval of the collection of information, the reduction of burden on the public, and overseeing agency use of information resources.

Subsec. (b)

Subsection (b), the general IRM policy functions, is amended to refer to information resources management rather than information technology. The specific requirements are then updated and streamlined—again, with a major purpose being the management of information resources.

New specific functions assigned the Director are to foster greater sharing, dissemination, and access to public information; oversee the development and implementation of "best practices" in IRM by Federal agencies; and oversee agency integration of program and management functions with their IRM functions (in many cases agencies have conducted them as separate activities as if there was no relationship between them). An agency's strategic plan (sometimes referred to as an agency business plan) should establish the mission for agency programs with performance measures to measure program performance (in accordance with the requirements of the Government Performance and Results Act) and the IRM plan should describe how information resources will be acquired and managed in support of the agency programs.

Subsec. (c)

The collection of information and paperwork control subsection is amended so as to fit with other sections, e.g., paperwork burden reduction goals in section 3505, agency responsibilities in section 3506, and the review and approval of proposed agency collections

of information in section 3507. One new specific requirement is added to highlight the need to reduce the burdens associated with government procurement-related paperwork. This requires coordination between OIRA and the Office of Federal Procurement Policy (OFPP) in the review of proposed agency collections of procurement-related information. The focus on minimizing burden remains (in paragraph (3)). It is complemented (in paragraph (4)) by the mandate to maximize the utility and benefit of information once it is collected or created by or for the Federal Government. OIRA is to oversee agency development of burden estimates (in paragraph (5)); i.e., to ensure consistency among agencies in burden estimation.

Subsec. (d)

New provisions are established to provide specific guidance for the management of information dissemination functions. These were, heretofore, only generally referred to in current law (e.g., sec. 3504(a)). While the Act's life cycle approach previously conveyed an expectation of OMB oversight of agency information dissemination functions, the developing capabilities of information technologies for this purpose necessitates the articulation of specific OMB information dissemination policy setting and oversight responsibility. As with other OMB IRM functions detailed in section 3504, the counterpart agency information dissemination responsibilities are spelled out in section 3506.

This new subsection requires OMB to develop governmentwide policies and guidelines to guide agency dissemination of public information. An important part of the mandate applies to the dissemination of information, regardless of form or format. This is meant to emphasize the need to develop policies and practices to promote dissemination of information in electronic format, as well as traditional paper forms.

Subsec. (e)

OMB's statistical policy and coordination duties are spelled out in greater detail to assist in improving the coordination of the decentralized Federal statistical system. Specific duties codified by this legislation include: coordinating system activities to ensure the integrity, objectivity, impartiality, utility, and confidentiality of information collected for statistical purposes; ensuring that budgetary proposals are consistent with governmentwide priorities for improving statistics; developing policies for the timely and orderly release of statistical data; promoting the sharing of statistical information; and coordinating participation of the United States in international statistical activities. To facilitate interagency coordination and improve Federal statistical policy, the subsection calls for the creation of an Interagency Council on Statistical Policy. It also calls for OMB to provide opportunities for training for employees for training in statistical policy.

Subsec. (f)

OMB's records management duties are reaffirmed and are strengthened to include oversight of agency implementation of

records management policies established by the Archivist of the United States and the Administrator of General Services. Given emerging issues regarding electronic records management, specific reference is made to emphasize the effort to develop policies and practices to ensure that ultimate need to archive information in electronic format be considered in the initial planning and design of automated information systems.

Subsec. (g)

OMB's privacy and security functions are amended to streamline language and integrate policies related to privacy, confidentiality, security, disclosure, and sharing of information. The current references to security are strengthened by citing the Computer Security Act of 1987. And consistent with OIRA oversight on the Act, the subsection is amended to focus OIRA oversight on the pressing need of agency computer security planning to address "risk" of possible harms and to afford security protections commensurate with the risk involved.

Subsec. (h)

OMB's information technology (heretofore, ADP) duties are revised to reflect the need to integrate information technology management functions (like other elements of IRM) with program functions to improve program performance. The Committee is convinced that OMB must improve its ability to affect agency mission accomplishment through the effective management of information technology, especially through the application of GAO's "Best Practices" recommendations and OMB policy guidance and oversight, as provided under the Act.

Specific OMB responsibilities added to those in this subsection of current law are for OMB to: (1) coordinate information technology procurement policies with the Office of Federal Procurement Policy (OFPP) in OMB; and (2) ensure agency integration of IRM plans, program plans, and budgets to assist in the planning, use and management of information technology. Consistent with other changes made by the legislation to focus OMB's activities on policy guidance and management as opposed to operational responsibility, the legislation also highlights in this subsection the importance and responsibility of GSA and NIST to work in partnership with OMB to improve agency information technology functions. Finally, the legislation also amends this subsection to make word changes for the sake of consistency and clarity.

SEC. 3505. ASSIGNMENT OF TASKS AND DEADLINES

Section 3505 is amended to remove now-outdated tasks and deadlines assigned to the Director in current law from the 1980 Act and the 1986 amendments and to provide a new set of OMB and agency objectives.

1. OMB is to set, in consultation with agency heads, an annual governmentwide goal for the reduction of information collection burdens by at least 10 percent, as well as agency-specific goals for paperwork reduction that "represent the maximum practicable opportunity in each agency" and for improving IRM activities support of agency programs. The Committee anticipates that the burden re-

PAPERWORK REDUCTION ACT
P.L. 104-13
[page 42]

duction goals will be measured against existing levels of burden estimated for the time the goals are set.

2. OMB is to conduct pilot projects to test alternative policies and procedures to fulfill the purposes of the Act (with the authority to waive the application of designated agency regulations or administrative directives involving the collection of information after giving timely notice to the public and Congress regarding the need for such waiver), particularly with regard to minimizing the Federal information collection burden.

3. In consultation with GSA, the National Institute of Standards and Technology (NIST), National Archives and Records Administration (NARA), and Office of Personnel Management (OPM), OMB is to develop and maintain a governmentwide strategic IRM plan that describes: (1) the objectives and means by which Federal agencies will apply information resources to improve agency and program performance; (2) plans for reducing information collection burdens, enhancing public access to information, and meeting Federal information technology needs; and (3) progress in using IRM to improve agency performance and the accomplishment of missions.

### SEC. 3506. FEDERAL AGENCY RESPONSIBILITIES

Because a major purpose of this reauthorization of the Act is to more clearly define and assign responsibilities and accountability for each information function, the legislation substantially revises section 3506 to describe the key agency functional IRM responsibilities that mirror the OMB responsibilities set out in section 3504. The Committee intends this section to stand as a clear mandate to agencies that responsibility for agency IRM rests squarely with the agency, and that each agency is expected to take this responsibility very seriously. Agencies should also be cognizant of other IRM responsibilities spelled out in more detail in related IRM laws.

*Subsec. (a)*

This subsection establishes the management structure which the agencies are to establish in carrying out their IRM responsibilities.

1. Each agency's IRM responsibility is clearly vested in the agency head to carry out and integrate IRM activities in a manner that improves agency productivity, efficiency, and effectiveness and that complies with the requirements of the Act and the related policies established by OMB.

2. The current law is unchanged with regard to the establishment of an agency designated senior IRM official. The senior IRM official is primarily responsible for assisting top agency program and management officials in managing information resources in support of agency programs and activities and for the effective and efficient design, development, and delivery of information activities to support program responsibilities and comply with the requirements of this Act.

3. The senior IRM official is required to head an office responsible for ensuring agency compliance with prompt, efficient, and effective implementation of the information policies and information resources management responsibilities established under this Act, including the reduction of information collection burdens on the

---

LEGISLATIVE HISTORY
HOUSE REPORT NO. 104-37
[page 43]

public. Subsection (c) provides that it is this office that is to review and certify proposed collections of information for OMB review and approval. Also, the senior IRM official and staff are to possess the qualifications necessary to administer the agency's IRM functions.

4. Consistent with the goal of integrating IRM in program management, the legislation specifies that agency program officials are responsible and accountable for information resources assigned to and supporting their programs. The provision also describes the relationship between the senior IRM official and program and management officials, including the Chief Financial Officer (or comparable official). In consultation with the senior IRM Officer and the senior IRM official, program officials are to define program information needs and cooperatively develop strategies, and capabilities to meet those needs.

*Subsec. (b)*

With respect to general information resources management, each agency is to undertake several specified actions:

1. Manage information resources to reduce information collection burdens, increase program efficiency and effectiveness, and improve the integrity, quality, and utility of information to users both within and outside the agency;

2. Develop and maintain a current strategic IRM plan describing how the agency will employ information resources to accomplish its agency missions;

3. Maintain an ongoing process to improve IRM and integrate it with organizational planning, budget, financial management, human resources management, and program decisions; to develop an accurate accounting of information technology expenditures and related expenses; and to establish goals for improving IRM's contribution to agency programs;

4. Maintain an inventory of information resources, including directories necessary to fulfill the Government Information Locator Service (GILS) requirements of section 3511; and

5. Conduct IRM training programs to educate program and management officials about the importance of IRM.

*Subsec. (c)*

With regard to the collection of information and the control and reduction of paperwork burdens, the legislation specifies detailed agency paperwork clearance requirements. The Committee believes significant improvements can be made to the information collection clearance process by focusing increased agency attention to (and public participation in) the initial formulation of and periodic review of information collections. One improvement provided by a more complete airing of issues during the course of the agency's development of an information collection proposal should be to reduce the amount of contention that in the past arose relatively late in the process during OIRA review.

1. Section 3506(c) mandates a detailed information collection evaluation procedure requiring each agency to establish a process within the office designated under subsection (a), independent of

program responsibility, to evaluate proposed collections. This office must:

Review a collection of information before it is submitted to OMB for review, that includes making an independent evaluation of its need; preparing a description of it, a collection plan, and a burden estimate; plan testing the collection, if appropriate; and developing a plan for the management and use of the information to be collected;

Ensure that information collections are inventoried, display a control number and, when appropriate, an expiration date; indicate the collection is in accordance with the Act; and contain a statement informing the person being asked why the information is being collected, its use, its burden, and whether responses are voluntary, required to obtain a benefit, or mandatory. This requirement is transposed from current law (section 3504(c)(3)) to make it more clearly an agency responsibility, rather than a duty of OMB. Note that this requirement must also be certified to by each agency (see section 3506(c)(3)(F)); and

Assess the information collection burden of proposed legislation affecting the agency.

2. Each agency is to provide a 60-day public comment period which occurs before the proposed collection is submitted to OMB for review. While such comment has been useful in the past, and could continue to be so, public comment on agency development of information collections should help:

Determine whether the information collection is necessary for the proper performance of the functions of the agency;

Assess the accuracy of, and improve, the agency's burden estimate;

Enhance the quality and utility of the information to be collected; and

Minimize the information collection burden, including through the consideration and use of alternate information technologies.

This agency public comment period is not required for proposed information collections contained in proposed rules, which must be reviewed by OIRA under section 3507(d) (under this legislation, section 3504(h) under current law). The reason for this exemption is that such proposals solicit public comment through the agency notice of proposed rulemaking (NPRM) under the Administrative procedure Act. To require an additional (and earlier) agency public comment period would result, as a practical matter, in agency publication of advance notices of proposed rulemaking (ANPRM) for every proposed rule that contains a collection of information. This would create a significant amount of internal government paperwork and expense for an insignificant improvement in opportunities for public notice and comment.

This agency public comment period is also not required if the agency can demonstrate good cause for not doing so to OMB. Given the nature of certain kinds of information collections, advance notice may tempt at least some potential respondents either to destroy the information sought or to take other action to frustrate the

legitimate goal of the agency, for example, the seizure of illegally gained financial assets.

3. Each agency is to certify (with a supporting record, including comments received, and an agency response to any significant issues raised by the public) that each proposed collection of information submitted to OMB for review under section 3507:

Is necessary for the proper performance of the functions of the agency, including that it has practical utility;

Reduces, to the extent practicable and appropriate, the burden on respondents, which may include establishing alternative compliance or reporting requirements for small entities in accordance with the Regulatory Flexibility Act (5 U.S.C. chapter 6);

Is written using plain, understandable language;

Is to be implemented in ways consistent and compatible, to the maximum extent practicable, with the respondents' existing reporting and recordkeeping practices;

Informs the respondent why the information is being collected; now it is to be used; a burden estimate; and whether responses are voluntary, for a benefit, or mandatory;

Has been developed by an office that has allocated resources for the management and use of the information;

Uses appropriate statistical survey methodology; and

Considers and uses statistical information technologies, to the extent practicable, to reduce information collection burden, and improve data quality, agency efficiency, and responsiveness to the public.

## Subsec. (d)

As a complement to the delineation of OMB responsibilities at section 3504(a) to develop and oversee information dissemination policies, the legislation in this subsection establishes specific agency operational responsibilities to ensure that the public has timely and equitable access to public information. These provisions are largely consistent with the information dissemination principles of OMB Circular No. A-130 (58 Fed. Reg. 36068, July 2, 1993, and 59 Fed. Reg. 37906, July 25, 1994), particularly as they relate to maintaining a diversity of public and private information dissemination channels, and avoiding improperly restrictive practices. Most generally, these statutory provisions are intended to guide agency dissemination activities and promote public access to government information in the increasingly multiple forms and formats made possible by new information technologies. Accordingly, these agency dissemination responsibilities apply to Federal public information, "regardless of the form or format in which it is disseminated."

1. The key purpose contained in 3506(d)(1) is to provide for the dissemination to the public of public information products and services on a timely, equal, and equitable terms. The goal of nondiscrimination requires agencies not only to refrain from enhancing the position of some members of the public over that of others, but to refrain from enhancing the Federal Government's position over that of others as well.

Each agency must ensure that the public has timely and equitable access to the agency's public information, including by encouraging a diversity of public and private sources, and by agency dissemination of public information in an efficient, effective, and economical manner, including, for public information maintained in electronic format, timely, equal, and equitable access to the underlying data. The goal in this paragraph is to enunciate clearly the obligation of Federal agencies to ensure effective access to public information held by the government. The two secondary objectives are for the agencies to: (1) encourage a diversity of providers in the private and public sectors, while avoiding unnecessary duplication of information; and (2) disseminate information, whose dissemination is determined by the agency to be necessary for the proper performance of its functions, efficiently, effectively, and economically.

This obligation also requires agencies to disseminate and make public information available on a non-discriminatory and non-exclusive basis to any public or private entity for any lawful purpose, including for redissemination of the information, or for its incorporation in another information product or service. In addition, ensuring effective access can require agencies (consistent with budget constraints) to eliminate, reduce, or otherwise compensate for barriers that may frustrate intended users, e.g., excessive charges, licensing requirements, or technical barriers.

The term "equal" modifying "timely and equitable" information dissemination is intended to ensure against agencies discriminating against or otherwise disadvantaging classes of users, particularly commercial users. Agencies must balance it, however, against other policies, specifically, the proper performance of agency functions and the need to ensure that information dissemination products reach the public for whom they are intended. If an agency's mission includes organizing information to certain specific groups or members of the public and the agency determines that user charges will constitute a significant barrier to carrying out its responsibility, the agency may have grounds for reducing or eliminating its user charges for the information dissemination product, or for exempting some recipients from the charge.

2. Subsection 3506(d)(2) requires that each agency regularly solicit and consider public input on the agency's information dissemination activities. This includes outreach to the public to ascertain information user needs so that information can be disseminated in useful forms and formats. This also includes gathering information on information provided by other public or private sources, in order to avoid needless duplication of effort.

3. Subsection 3506(d)(3) sets out public notice requirements. Before taking any action to initiate, substantially modify, or terminate a public information product or service, an agency must take steps to inform interested members of the public of its plans. The purpose of the notice is to maximize the ability of the public to influence agency information plans at an early stage. This subsection provides that each agency should provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products.

209

4. Subsection 3506(d)(4) lists four categories of conduct that agencies should avoid unless specifically authorized by statute. These four categories of conduct are: (1) exclusive, restricted, or other distribution arrangements that adversely affect the timely and equitable availability of public information; (2) restrictions on or regulation of the use, reuse, or redissemination of information; (3) fees or royalties for reuse, resale, or redissemination of information; and (4) the establishment of user fees for information that exceed the cost of dissemination, unless the head of the agency, with public notice, requests the establishment of higher user fees; the Director, with public notice, so agrees; and this waiver would not materially impair the timely and equitable availability of public information to the public.

Subparagraph (A) provides that agencies should avoid establishing an exclusive, restricted, or other distribution arrangement that interferes with timely, equal, or equitable availability of public information to the public. The purpose of this provision is to prohibit agencies from establishing proprietary monopoly distribution arrangements for public information.

Subparagraph (B) provides that agencies should avoid restricting or regulating the use, resale, or redissemination of public information. Except where a statute specifically authorizes such a restriction, public information may continue to be used, republished, resold, extracted, and redisseminated in any way by any person.

Subparagraph (C) provides that agencies should avoid charging fees or royalties for resale or redissemination of public information. Public information may be used, sold, or redisseminated whether or not the person paid any fees to the government to obtain the information.

Subparagraph (D) provides that agencies should avoid establishing user fees for public information products that exceed the cost of dissemination. This is consistent with current OMB policies. While current user fee policies for other goods and services may support other types of price structures, information products can treat its information dissemination activities as a government revenue sources. It is the policy of H.R. 3300 that the government should not make a profit by selling of public information collected and compiled at taxpayer expense to the American public.

It is intended that the granting of waivers will be rare and that the authorized terms and conditions will narrowly circumscribe any waivers. It also is intended that any waivers will be of limited duration. OMB may not help an agency evade the cost of dissemination pricing requirement by repeatedly granting it waivers.

Subsec. (e)

With regard to agency statistical activities, the legislation requires agencies to:

Ensure the relevance, accuracy, timeliness, integrity, and objectivity of its statistical information;

Fully inform respondents regarding the sponsors, purposes, and uses of statistical surveys and studies;

210

PAPERWORK REDUCTION ACT
P.L. 104-13

[page 48]

honor pledges of confidentiality;

Observe Federal standards and rules on data collection, analysis, documentation, sharing, and dissemination of statistical information;

Ensure timely publication of survey and study results, including about their quality and limitations; and

Make data available, consistent with privacy and confidentiality measures, to statistical agencies and readily accessible to the public.

Subsec. (f)

Protect respondent privacy and ensure that disclosures fully

With respect to records management, the legislation describes specific agency responsibilities to implement and enforce applicable policies and procedures (established by the Archivist of the United States and the Administrator of General Services), including requirements for archiving information maintained in an electronic format, particularly in the planning, design and operation of information systems. This emphasis on electronic records parallels the emphasis added to OMB's records management responsibilities in section 3504(f).

Subsec. (g)

The legislation describes agency responsibilities for privacy and security. Each agency must:

Enforce applicable policies and procedures on privacy, confidentiality, security, disclosure and sharing of information maintained by an agency or by another entity on behalf of the agency;

Be responsible and accountable for compliance with the Freedom of Information Act, the Privacy Act, the Computer Security Act, and other related information management laws; and

Develop capabilities and provide protections, in carrying out the Computer Security Act, as needed to address cost-effectively the risk of harm from loss, misuse, or unauthorized access to or modification of information maintained by or on behalf of an agency.

Subsec. (h)

Finally, the legislation specifies actions agencies are to take with respect to information technology. Each agency must:

Implement and enforce applicable information technology management policies, procedures, and standards.

The agency designated IRM official must be responsible and accountable for information technology investments;

Use information technology to improve the productivity, efficiency, and effectiveness of agency programs, including dissemination of public information; and

Propose changes in legislation, regulations, and procedures to improve information technology practices, including changes to better use technology to reduce information collection burden;

211

LEGISLATIVE HISTORY
HOUSE REPORT NO. 104-37

[page 49]

SEC. 3507. PUBLIC INFORMATION COLLECTION ACTIVITIES; SUBMISSION TO DIRECTOR; APPROVAL AND DELEGATION

Section 3507 provides the details of the OMB paperwork clearance process and the actions agencies must take to get their proposals reviewed and approved by OMB. With the establishment of specific agency information collection clearance requirements and the creation of a way for the public to participate earlier in the information collection development process, several modifications and cross-references are made to ensure that the agency clearance actions are performed consistent with and to facilitate the efficient functioning of the overall clearance process. In this regard, for example, the OMB process is streamlined in terms of the comment period and review time limit (with a maximum of 60 days instead of 60 days plus a discretionary 30-day extension).

Subsec. (a)

The current law's basic paperwork clearance requirements remain the same, that is, that an agency is not to conduct or sponsor the collection of information unless, in advance of the adoption or revision of the collection, the Act's information collection clearance requirements are met at both the agency and OMB levels.

The agency must conduct its review (whose elements are established under section 3506(c)(1)), evaluate public comments received under section 3506(c)(2), submit to OMB the certification required by section 3506(c)(3), together with the proposed collection of information and supporting material; and publish a notice in the Federal Register describing the submission, its title, a summary, the need for the information, its proposed use, respondents and frequency of response, an estimate of the burden, and notice that comments may be submitted to the agency and OMB.

2. The agency may not collect the information without OMB approval, unless approval has been inferred (i.e., after passage of time limit for OMB review, see subsection (c), below).

3. The agency must obtain an OMB-assigned control number to be displayed on or by the collection of information.

Subsec. (b)

OMB is to provide at least 30 days for public comment on the proposed collection of information before making a decision, except in emergencies, as provided under subsection (j), and except for good cause OMB is also authorized to shorten a collection to a mation more rapidly than in 30 days if it proves a collection clause to do so. For example, given the nature of certain kinds of information collections, delay in OMB approval may tempt at least some potential respondents either to destroy the information sought or to take other action to frustrate the legitimate goal of the agency, for example, the seizure of illegally gained financial assets.

Subsec. (c)

To clarify the existing law, sections 3507(c) and (d) now clearly delineate the different procedures for OMB clearance of information collections not contained in proposed regulations and information collections contained in proposed regulations (subject to notice

212

and comment), respectively. As described below, subsection (d) is substantively the same as the current law's language in section 3504(h).

Subsection (c) states that, for any proposed collection of information not contained in a proposed rule, OMB has 60 days for its review. If OMB does not notify the agency of a denial or approval within the 60 days, the approval may be inferred, a control number is assigned, and the agency may collect the information for not more than one year.

Subsec. (d)

The requirements of current law at section 3504(h) with regard to OMB clearance of information collections contained in a proposed rule, are moved to this subsection so as to place the proposed rule requirements and clearance requirements in one section. While no substantive change is intended, the paperwork clearance provisions in OIRA are made clearer for consistency and clarity. In light of existing legislative history, no substantive changes are proposed. For example, under current law the substantive standard for review of collections of information in proposed rules, which are subject to notice and comment, is identical to that applicable to all other collections of information. (See, Cong. Rec. December 15, 1980, S 16700 Kennedy statement). As under current law:

1. An agency must, no later than the publication of the notice of proposed rulemaking (NPRM), send to OMB any proposed rule containing a collection of information and supporting material. Within 60 days after the NPRM, OMB may file public comments on the proposed regulatory collection of information pursuant to the standards set forth in section 3508.

2. When the final rule is published, the agency must explain how any collection of information contained in the final rule responds to the comments, if any, filed by OMB or the public, or explain how reasons such comments were rejected.

3. OMB cannot disapprove any collection of information contained in an agency rule, if OMB received notice and did not comment within 60 days after the NPRM.

4. OMB can disapprove:

Any collection of information which was not specifically required by an agency rule (i.e., and thus should be reviewed under subsection (c));

Any collection of information contained in an agency rule, if the agency failed to comply with the Act's submission and clearance requirements;

Any collection of information contained in a final rule, if OMB finds within 60 days after the publication of the final rule that the agency's response to OMB's comments on the collection proposed in the NPRM cannot be approved under the standards set forth in section 3508; or

Any collection of information contained in a final rule, if OMB finds that the agency substantially modified the collection in the final rule from that in the NPRM and did not comply with OMB's submission and clearance requirements.

5. The procedures in this subsection apply only when an agency publishes a NPRM and requests public comments.

2-13

6. The decision by OMB to approve or not act upon a collection of information in an agency rule is not subject to judicial review. No substantive change from existing section 3504(h)(9) is intended.

Subsec. (e)

This new subsection consolidates several provisions in current law regarding public disclosure of OMB information collection clearance activities (i.e., current law—sections 3504(b)(6) and 3507(f)(3)). It also presents the disclosure requirement in a more comprehensive fashion—any decision by OMB to disapprove a collection of information, or to instruct an agency to make substantive or material change to a collection of information, is to be publicly available, along with an explanation of the reasons for such decision. Public disclosure is also required for written communications to and from OIRA regarding a proposed collection of information (current law—section 3507(f)).

These requirements do not, however, require the disclosure of any national security information (current law—sec. 3507(h)), or "any communication relating to a collection of information, the disclosure of which could lead to retaliation or discrimination against the communicator." This new language is added to protect "whistle-blowers" who otherwise might fear possible retaliation from agencies for complaining about agency collections of information.

Subsec. (f)

The current law's authorization of independent regulatory agency overrides of OMB information collection disapproval is unchanged, but for word changes for purposes of consistency and clarity.

Subsec. (g)

The current law's limit of three years for information collection approvals is unchanged, but for word changes for purposes of consistency and clarity.

As originally enacted, the Act described only procedures for gaining approval of new information collections. With the 3-year limit on OMB's approvals, it was largely assumed that agencies would be required to resubmit the collections for reapproval upon their expiration, and procedures for this purpose were subsequently adopted by OMB and are codified at 5 C.F.R. 1320.14. Repeated questions, however, about how agencies, OMB, and the public should approach continuing collections recommend establishing a statutory requirement to prescribe the conditions for re-review. The new procedure provided by the legislation has three major elements:

1. If an agency decides to seek an extension of OMB's approval granted for a currently-approved collection of information, the agency is to conduct the review required under section 3506(c), including the seeking of public comment on the continued need for the information and the burden imposed. After seeking comment, but no later than 60 days before the expiration of OMB's approval (and control number), the agency is to submit the collection to

2-14

OMB, with an explanation of how the agency has used the information under the current approval.

2. If OMB disapproves an information collection in an existing rule, or recommends or instructs the agency to make a substantive rule, or material change to such a collection, OMB must publish an explanation and shall instruct the agency to enter rulemaking to consider changes to the collection of information in the rule and thereafter to submit the collection for review under subsection (d) (as an information collection contained in a proposed rule).

3. An agency is not allowed to make a substantive or material change to a collection of information after it is approved by the Director unless the modification to the collection itself is submitted for approval and is approved.

### Subsec. (i)

The current law's provisions on OMB delegation of information collection clearance authority to agencies is unchanged, except for word changes for purposes of consistency and clarity.

### Subsec. (j)

The provisions in current law on expedited OMB paperwork clearance in emergency and time-limited situations are modified with word changes for consistency and clarity, and to provide that the standard for agency determination of likelihood (as opposed to the reasonable likelihood as opposed to a certainty) of public harm, failing to respond to an emergency or violation of a legal deadline. The Committee does not intend agency heads or OMB to use this modification to alter their clearance practices from that under current law.

### SEC. 3508. DETERMINATION OF NECESSITY FOR INFORMATION; HEARING

Section 3508 provides the standard for review for OMB paperwork clearance decisions—"whether the collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility." Except for word changes for purposes of clarity, consistency, and style, the substance of OMB's authority to approve or disapprove agency collections of information remains unaltered from current law and the full scope of the standards, policies, and purposes set forth in the Act. Thus, OMB's attention to reducing burden, eliminating duplication, coordinating interagency collections, and overseeing the efficient and effective use of information collected by and for Federal agencies arises from and is authorized by this "necessary for the proper performance" standard.

### SEC. 3509. DESIGNATION OF CENTRAL COLLECTION AGENCY

This section's provisions on OMB's designation of one agency to obtain information for two or more agencies are unchanged from current, except for word changes for purposes of consistency and clarity.

The current law's provisions are unchanged, except for word changes for purposes of consistency and clarity. This section encourages agencies to cooperate in data sharing to facilitate more efficient and effective, and less burdensome information collection and use.

### SEC. 3510. COOPERATION OF AGENCIES IN MAKING INFORMATION AVAILABLE

The current law's provisions are unchanged, except for word changes for purposes of consistency and clarity. This section encourages agencies to cooperate in data sharing to facilitate more efficient and effective, and less burdensome information collection and use.

### SEC. 3511. ESTABLISHMENT AND OPERATION OF GOVERNMENT INFORMATION LOCATOR SERVICE

Section 3511 required OMB to develop and operate a Federal Information Locator System (FILS). The section is amended to update the FILS requirement and transform it into an attainable goal.

The section now provides that OMB, to assist and promote agency and public access to government information:

1. Cause to be established a comprehensive, agency-based electronic Government Information Locator Service (GILS) to identify major agency information systems, information holdings, and disseminate information products;

2. Require each agency to have an agency information locator service as a component of a governmentwide GILS;

3. Establish an interagency committee, with the National Archives and Records Administration (NARA), GSA, the Government Printing Office (GPO), and the Library of Congress, to advise the Secretary of Commerce on the development of technical standards to ensure compatibility, promote information sharing among the agencies, and promote access to government information by the public;

4. Consider public access and other user needs in the establishment and operation of GILS;

5. Ensure the security and integrity of GILS, including so that only information intended to be disclosed to the public or shared with other agencies is disclosed or shared; and

6. Periodically review GILS and recommend improvements (e.g., ways to improve public access to government information and interagency sharing of information to improve agency performance).

In carrying out its responsibility under section 3511 to consider user needs in establishing and operating the GILS, OMB shall take appropriate steps to facilitate the inclusion in the Service of non-government information products and services based upon federal government information. One critical user need, as recognized in this legislation, is public access to a diversity of sources for public information. GILS can help satisfy that need by electronically accommodating non-federal sources of this information, as well as to databases maintained by federal agencies.

### SEC. 3512. PUBLIC PROTECTION

The intended scope, purposes, and requirements of section 3512's current provisions on public protection are unchanged. The Act's information collection clearance requirements are unchanged. The section is amended, however, for purposes of consistency and clarity, and to

unequivocally cover all collections of information, i.e., maintaining, providing, or disclosing information to or for an agency or person, or to a third party or the public on the instructions or behalf of a Federal agency.

Court decisions have affirmed that the section's intended protection can be asserted effectively in empowering members of the public to defend themselves against unapproved collections of information which are subject to the Act. The Committee supports this provision and the purposes for which it was originally enacted, and continues, to serve.

SEC. 3513. DIRECTOR REVIEW OF AGENCY ACTIVITIES; REPORTING; AGENCY RESPONSE.

Section 3513 is updated and streamlined to provide for periodic executive branch review of agency implementation of the Act and related IRM laws. Many of the reviews of agency IRM activities conducted over the years have been compliance oriented. The section now focuses OMB review of agency IRM activities on determining their efficiency and effectiveness in helping to improve agency performance and achieve program missions and goals.

Each agency that has an IRM activity reviewed under this section is to respond, within 60 days of receiving the report on the review, with a written plan to the Director. The plan is to describe the steps, including milestones, that will be taken by the agency to address the IRM problems identified in the report and to improve agency performance and the accomplishment of its missions.

SEC. 3514. RESPONSIVENESS TO CONGRESS

Section 3514 provides that OMB is to inform the Congress on the major activities under the Act, including through an annual report. However, consistent with current legislative efforts to streamline congressional reporting requirements so as to mandate only that degree of reporting that is actually used, several detailed specifications for tabulations and lists are deleted from current law.

The focus of the report is changed—to be on the results achieved rather than mostly information of projects undertaken. The Director is to report on the extent that agencies have (1) record information collection burdens on the public, (2) improved the quality and utility of statistical information, (3) improved public access to Government information, and (4) improved agency performance and the accomplishment of agency missions through their IRM activities. For agencies that do not reduce information collection burdens by at least ten percent in the preceding year (a goal set forth in section 3505(1)), the agencies are to identify for OMB the program and legislative responsibilities which preclude such burden reduction, and suggest recommendations to help the agency meet that burden reduction goal. OMB is to provide in the annual report a list of these program and legislative responsibilities, and the recommendations with which it agrees that Congress should take into consideration in seeking to reduce paperwork burdens imposed by legislation.

The current law's provisions are unchanged.

SEC. 3515. ADMINISTRATIVE POWERS

The current law's provisions are unchanged.

SEC. 3516. RULES AND REGULATIONS

The current law's provisions are unchanged.

SEC. 3517. CONSULTATION WITH OTHER AGENCIES AND THE PUBLIC

This section is amended to permit a person to request OMB to review any collection of information to determine if the person must comply with the collection—whether the collection is covered by the Act and has been properly cleared. Unless the request is frivolous (or extra time is needed), the Director is to respond to the person within 60 days and take any appropriate remedial action. The Director is also to coordinate the response with the agency responsible for the collection of information. The section is also amended to make word changes for purposes of consistency and clarity.

SEC. 3518. EFFECT ON EXISTING LAWS AND REGULATIONS

Except for the provision discussed in the next paragraph, the current law's provisions are unchanged, except for word changes for purposes of consistency and clarity.

SEC. 3519. ACCESS TO INFORMATION

The current law's provisions are unchanged, except for word changes for purposes of consistency and clarity.

SEC. 3520. AUTHORIZATION OF APPROPRIATIONS

This section is changed to make the Office of Information and Regulatory Affairs a fully integrated component of the Office of Management and Budget. OMB's appropriation is first determined by the Committees on Appropriations. To avoid cross purposes, the same should be true for all the components of OMB.

SECTION 3. EFFECTIVE DATE.

The provisions of this legislation, amending the Paperwork Reduction Act, shall take effect on October 1, 1995. This effective date is intended to allow OMB time to revise its paperwork clearance regulations, and to allow agencies time to submit any current information disclosure requirements for OMB clearance. Without this grace period, disclosure requirements currently deemed not subject to the Act due to the 1990 Supreme Court decision in Dole v. Steelworkers of America would immediately become unenforceable under the public protection language of section 3512. This could confuse the public and disrupt agency activities dependent upon such disclosure of third-party collections of information.

ROLL CALL VOTES

In compliance with clause 2(l)(2)(B) of rule XI of the House of Representatives, the Committee sets forth the record of the following roll call votes taken with respect to H.R. 830:

# PAPERWORK REDUCTION ACT
P.L. 104-13
(page 56)

**AMENDMENT NUMBER: #1 OF H.R. 830**

Description: Section 3505, page 19, line 8 strike "five" and insert "10".
Offered by: Mr. Fox.
Voice vote: Ayes.

**AMENDMENT NUMBER: #2 OF H.R. 830**

Description: Section 3501, page 2, line 10, insert microenterprises, after the words small businesses.
Offered by: Mr. Sanders.
Withdrawn.

**AMENDMENT NUMBER: #3 OF H.R. 830**

Description: Section 3504, page 12, line 14 strike "and" and insert in lieu thereof.
Offered By: Mr. Davis.
Voice vote: Ayes.

**AMENDMENT NUMBER: #4 OF H.R. 830**

Description: Page 55, strike line 11 through page 56, line 2, and insert the following:
Offered by: Mr. Kanjorski.
Voice vote: Ayes.
Passed as amended by the Kanjorski Amendment.

**AMENDMENT NUMBER: #5 OF H.R. 830**

Description: Strike Section 3518(c).
Offered by: Mr. Kanjorski.
Voice vote: Ayes.

**AMENDMENT NUMBER: #6 OF H.R. 830**

Description: En Bloc, Section 3504, 3505(a)(3), 3513(3).
Offered by: Mr. Owens.

# LEGISLATIVE HISTORY
HOUSE REPORT NO. 104-37
(page 57)

**AMENDMENT NUMBER: #7 OF H.R. 830**

Description: Section 3506(1) in subsection (b)(4) after Administrator of General Services.
Offered by: Mr. Owens.
Withdrawn.

**AMENDMENT NUMBER: #8 OF H.R. 830**

Description: En Bloc, Page 6, beginning at line 15, strike soliciting, or requiring the disclosure to third parties or the public and insert or soliciting. Offered by: Mrs. Collins—IL.
Failed by rollcall.

**AMENDMENT NUMBER: #9 OF H.R. 830**

Description: Page 56, line 17, before the first period insert the following: "for each fiscal years 1996, 1997, 1998, 1999, 2000."
Offered by: Mrs. Maloney.
Failed by roll call.